UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAE SOOG LEE,

                             Plaintiff(s),                    <u>REPORT AND
RECOMMENDATION</u>

                -against-                            CV 11-1266 (JFB) (ETB)[1]

LAW OFFICE OF KIM & BAE, PC,
BONG JUN KIM, and MUN KYEEUNG BAE,
in their individual and official capacities,

                             Defendant(s).
-----------------------------------------------------------------------X

TO THE HONORABLE JOSEPH F. BIANCO, United States District Judge:

      Before the Court is the Defendants' motion to dismiss the <u>pro se</u> Plaintiff's Complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants'

motion should be granted and Plaintiff's Amended Complaint should be dismissed in its entirety.

<u>FACTS</u>

      <u>Pro se</u> Plaintiff,  Jae Soog Lee ("Lee"), brings this action against defendants, Bong Jun

Kim ("Kim") and Mun Kyeeung Bae ("Bae"), individually and as partners in the law firm of Kim

& Bae, PC, for damages arising out of an alleged breach of contract between the parties.  (Am.

Compl. ¶ 28.)  Plaintiff is a South Korean attorney also licensed to practice in the State of New

York.  Plaintiff is not a United States Citizen.  Defendants are partners in the law firm of Kim &

---

[1]  The Court is grateful to <u>pro bono</u> law clerks Melissa Bassin, a graduate of the
University of Miami School of Law, and Daniel LaRose, a graduate of the University of
Pennsylvania Law School, for their assistance in the preparation of this Report and
Recommendation.

-1-

Bae, PC, which is incorporated in the State of New York and maintains offices in New York and New Jersey.

Plaintiff alleges that on or about August 26, 2009, Defendant Kim contacted her via email to discuss the possibility of working together. (Am. Compl. ¶ 6.) This communication led to a meeting between the parties on March 1, 2007 at the Fort Lee, New Jersey offices of Kim & Bae, PC. (Am. Compl. ¶ 7.) During this meeting, the parties discussed the possibility of Plaintiff filing for a Green Card so that she could work both in South Korea and the United States. (Id.) Plaintiff alleges that she received an email the following day from the Defendants suggesting that she hire an immigration attorney named Jerry Gonzalez. (Id.) Plaintiff was unable to reach Mr. Gonzalez and instead hired the law firm of Barst & Mukamal, L.L.P. to prepare a Green Card Petition. (Am. Compl. ¶ 8.) Plaintiff paid Barst & Mukamal, L.L.P. $2,500 for preparing a Permanent Employment Certification. (Am. Compl. ¶ 8-10.) Pursuant to the requirements of the Department of Labor, employment sponsorship is required to obtain American citizenship. See United States Department of Labor, Permanent Labor Certification, http://www.foreignlaborcert.doleta.gov/perm.cfm (last visited Jan. 4, 2012).

Plaintiff alleges that the parties entered into a formal agreement on March 9, 2007. (Am. Compl. ¶ 9.) Pursuant to this agreement, Plaintiff agreed to open a Kim & Bae, PC office in South Korea at her own expense. (Id.) In exchange, Defendants agreed to provide Plaintiff with employment sponsorship so that she could work in the United States and South Korea. (Id.) On March 14, 2007, Plaintiff registered two Kim & Bae, PC offices in South Korea. (Am. Compl. ¶ 11.) On or about June 9, 2007, Defendants allegedly opened a separate and unrelated  Kim & Bae PC office in South Korea in the same building as Plaintiff's office. (Am. Compl. ¶ 16.)

This is alleged to constitute a breach of the March 9, 2007 agreement between the parties. (Am. Compl. ¶ 17.) Plaintiff confronted the Defendants regarding the alleged breach on or about June 15, 2007, at which time Defendants agreed to pay the Plaintiff ten percent (10%) of the earnings from cases initiated in the second Korea office. (Id.)

On or about September 6, 2007, Defendant Kim filed a Permanent Employment Certification ETA Form 9089 with the Department of Labor. (Am. Compl. ¶ 19.) A sponsoring employer must complete this form and receive approval from the Department of Labor before a future employee can seek citizenship from the United States Citizenship and Immigration Services. See United States Department of Labor, Permanent Labor Certification, http://www.foreignlaborcert.doleta.gov/perm.cfm (last visited Jan. 4, 2012). During the certification process, the Department of Labor may select an employment application for audit, at which point an employer is directed to provide supporting documentation. See id. That occurred on or about January 8, 2008. Pursuant to the audit relating to the Plaintiff's Department of Labor application, Defendants confirmed that Plaintiff had been offered a full-time position with Kim & Bae, PC. (Am. Compl. ¶ 20.) Defendants also provided documents requested by the Department of Labor in March 2007. (Am. Compl. ¶ 21.) The Department of Labor certified Plaintiff for permanent employment on March 11, 2009. (Am. Compl. ¶ 22.) Such certification has a validity of 180 days, after which an employer must reapply for certification.[2] See United

---

[2] A certification is a prerequisite for obtaining United States Citizenship based on employment status. An actual I-140 application for United States Citizenship premised on one's employment status cannot be made without this certification from the Department of Labor. When Defendants allowed the certification from the Department of Labor to lapse by failing to apply for United States Citizenship on behalf of the Plaintiff, she became ineligible for employment-based citizenship. Plaintiff seeks declaratory relief granting her United States Citizenship in the form of a U-1 non-immigrant visa. This provides citizenship to victims of

States Department of Labor, Permanent Labor Certification,

http://www.foreignlaborcert.doleta.gov/perm.cfm (last visited Jan. 4, 2012).  According to

Plaintiff, a Permanent Residence I-140 form had to be filed by September 7, 2009.  (Am. Compl.

¶ 22.)

On April 6, 2009, before filing the I-140 form with the United States Citizenship and

Immigration Services, the parties allegedly agreed to a written modification of their original

agreement dated March 9, 2007.  (Am. Compl. ¶ 23.)  The April 6, 2009 modification extended

the original contract, which Plaintiff alleges was for a duration of two years, indefinitely and

incorporated the following new provisions; "(1) Ms. Lee reports business plan or process twice a

month; (2) Ms. Lee supervises a manager by working at the Seoul, South Korea office; and (3)

The firm subsidizes the expenses for the Korean Office."  (Id.)  The agreement also gave Plaintiff

the right to contact South Korean baseball players who might have an interest in playing for

American baseball teams, so that Kim & Bae, PC could represent them in negotiating

employment contracts.  (Id.)  In reliance on this new agreement, Plaintiff expended an additional

$2,500 on April 7, 2009 to prepare the necessary documents for her I-140 application.  (Am.

Compl. ¶ 25.)  In response to an email from Plaintiff requesting assistance with the her I-140

application, an employee of Kim and Bae, PC informed Plaintiff that the firm no longer intended

to sponsor her as an employee.  (Am. Compl. ¶ 26.)  Without the firm's sponsorship, Plaintiff

could not proceed with her immigration application.  (Am. Compl. ¶ 28.)

Plaintiff responded via email, expressing her anger over Defendants' decision and

---

certain enumerated crimes who are willing to assist law enforcement in the investigation of
alleged criminal activity.  One of the prescribed crimes is perjury.

accusing them of breaching their contract with Plaintiff several times between the years of 2007 and 2009.  (Id.)   Plaintiff asked for assistance in completing her I-140 application and informed Defendants that "if [they didn't] sign those papers within the above mentioned date," she could not "help but legally and publicly make an issue out of those cases of breach of contract."  (Id.) On or about April 23, 2009, Defendants filed a criminal complaint against the Plaintiff in New Jersey.  (Am. Compl. ¶ 29.)  Plaintiff was charged with criminal coercion in the State of New Jersey.  (Am. Compl. ¶ 29)  Plaintiff alleges that Defendants based their criminal claim on an intentionally fraudulent translation of the above-mentioned email.  (Am. Compl. ¶ 30.)  Plaintiff further alleges that Defendants committed perjury during a June 9, 2009 probable cause hearing. (Am. Compl. ¶ 42.)  During this hearing Defendants knowingly mistranslated the aforementioned email and stated that Plaintiff was not an employee but rather an independent contractor.  (Am. Compl. ¶ 42-43.)  Defendants also allegedly stated that the contract was never of a fixed duration.  (Am. Compl. ¶ 42.)  Plaintiff argues that the March 9, 2007 agreement was a two-year employment contract.  (Id.)  In October of 2009, the Plaintiff's case was downgraded and moved to a municipal court.  (Am. Compl. ¶ 47.)  The court dismissed the criminal case against Plaintiff on March 18, 2010.  (Am. Compl. ¶ 50.)

Plaintiff commenced the within action on March 18, 2011, bringing claims under (1) 42 U.S.C. § 1983 (for unlawful arrest and malicious prosecution); (2) 18 U.S.C. § 242 (the criminal violation of civil rights by person(s) acting under the color of state law); (3) 20 C.F.R. § 656.12 (prohibits applications for permanent labor certification and approved labor certifications from being used as articles of commerce); (4) 28 U.S.C. §§ 2201-2202 (declaratory judgment); and (5) 8 C.F.R. § 214.14(a)(3) (an alien's right to a U-1 non-immigrant visa), and several causes of

action that arise under New York State law including: (1) defamation; (2) intentional infliction of emotional distress; (3) malicious prosecution; (4) abuse of process; (5) perjury; (6) unjust enrichment; and (7) breach of contract. Defendants now move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

DISCUSSION

I.   Legal Standard

   A.   Federal Rule of Civil Procedure 12(b)(6)

      To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 127 S. Ct. at 1974. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 1955 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (internal quotation marks and citation omitted).

   In analyzing a 12(b)(6) motion, "the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff." Frazier v. Coughlin, 850 F.2d 129, 129 (2d Cir. 1988). The Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), provided a two-prong approach for determining which claims should be

-6-

dismissed. First, the court should identify "pleadings, that, because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. "Second, a court should assume that any remaining well-pleaded allegations are true and then determine whether they plausibly give rise to an entitlement to relief." Comfort Inn Oceanside v. Hertz Co., No. 11- CV-1534, 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011) (quoting Iqbal, 129 S. Ct. at 1950) (internal quotation marks omitted). In making determinations of plausibility, a court's "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

B.    Federal Rule of Civil Procedure 12(b)(1)

A district court should dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiff[]." Wood v. GMC, No. CV 08-5224, 2010 U.S. Dist. LEXIS 96157, at *9 (E.D.N.Y. Aug. 23, 2010) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004)) (additional citation omitted) (alteration in original). The Court may also "consider evidence outside the pleadings, such as affidavits" when determining whether it has jurisdiction. Stoothoff v. Apfel, No. 98 Civ. 5724, 1999 U.S. Dist. LEXIS 10459, at *1 (S.D.N.Y. July 7, 1999) (citing cases). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Wood, 2010 U.S. Dist.

LEXIS 96157, at *9 (quoting <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005)).

II.  <u>Claims That Should be Dismissed Under Federal Rule of Civil Procedure 12(b)(6)</u>

A.  <u>Plaintiff's 42 U.S.C. § 1983 Claims Should be Dismissed Because Defendants did not Act Under Color of State Law</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>Showalter v. Brubaker</u>, 283 Fed. Appx. 33, 35 (3d Cir. 2008) (internal quotations and citations omitted). Plaintiff has alleged that Defendants have acted "under color of state law" by: (1) intentionally filing a false criminal complaint; and (2) conspiring with and encouraging a judge to continue proceedings in regard to the criminal complaint. (Am. Compl. ¶ 69-77.) These allegations fail to state a claim upon which relief can be granted.

First, the Defendants did not act under color of state law when they filed a criminal complaint. Assuming that the Defendants intentionally filed a false criminal complaint, as alleged in the Amended Complaint, the case law demonstrates that their conduct does not give rise to a §1983 action under New Jersey law: "[T]he filing of a false police report is not itself a constitutional violation." <u>Ellis v. Vergara</u>, No. 09-2839, 2009 U.S. Dist. LEXIS 117470, at *12 (D.N.J. Dec. 15, 2009) (quoting <u>Jarrett v. Township of Bensalem</u>, 312 Fed. Appx. 505, 507 (3d Cir. 2009)); <u>see also</u> <u>Arendas v. Hillsborough Police Dep't</u>, No. 09-5965, 2010 U.S. Dist. LEXIS 66123, at *10 (D.N.J. July 2, 2010) ("[A] person's false statement to the police or in a criminal

proceeding is not, without more, state action under § 1983.").[3]

Second, Plaintiff alleges that the Defendants conspired with a judge, with whom they had a "close and influential relationship," to prevent the criminal complaint from being dismissed, and to move forward with the criminal case without probable cause. (Am. Compl. ¶ 73.) However, the Plaintiff fails to allege adequate facts to support the allegation of a conspiracy. Rather, she concludes, based on the events which occurred in her criminal case, that Defendants must have conspired with the judge. "Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." Jones v. Miner, No. 06-1606, 2007 U.S. Dist. LEXIS 54898, at *12 (D.N.J. July 27, 2007) (internal quotation marks omitted) (citing Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1997).[4] There are no allegations of specific instances of conspiratorial conduct in Plaintiff's Amended Complaint. Plaintiff attempts to have the Court infer that a meeting took place between Defendants and the judge due to a portion of the probable cause hearing transcript in which the

---

[3] The same is true in New York. See Ginsberg v. Healy Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir.1999) (explaining that providing information to the police did not make the private actor a joint participant in state action); Armatas v. Maroulleti, No. 08-CV-310, 2010 WL 4340437, at *17 (E.D.N.Y. Oct. 19, 2010) ("A private citizen who files a police report, true or false, is not acting under color of state law . . . ."); Shapiro v. City of Glen Cove, No. 03-CV-0280, 2005 WL 1076292, at *7 (E.D.N.Y. May 5, 2005) (finding that a private citizen was not a state actor for Section 1983 purposes on the basis of making a police report, legitimate or not).

[4] Similarly, in New York, "[t]o state a claim of conspiracy under § 1983 the complaint must contain more than mere conclusory allegations." Moore v. City of New York, No. 08-CV-2449, 2011 U.S. Dist. LEXIS 20370, at *8 (E.D.N.Y. February 28, 2011) (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the Plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations, internal quotation marks, and internal alterations omitted)).

judge asks Defendants "[a]nd you allege in your complaint that she threatened to expose a secret . . . ." (Am. Compl. ¶ 74.) Plaintiff contends that there must have been a meeting between the Defendants and the judge because, otherwise, the judge could not have been aware of such an allegation by Defendants due to the lack of a formal criminal complaint.[5] Id. Yet, the Plaintiff also asserts that the Defendants filed a fraudulent criminal complaint. (Am. Compl. ¶ 70.) Therefore, the Plaintiff's contention that a complaint was never filed is unfounded, and it follows that an alleged meeting between the judge and Defendants was not necessary for the judge to have the information required to make the statements that he did during the probable cause hearing. With no other specific instance of misconduct in the Plaintiff's Amended Complaint, the conspiracy claim should be dismissed.

B.    18 U.S.C. § 242 is a Criminal Statute that Does Not Give Rise to a Private Cause of Action

Plaintiff also predicates her Section 1983 claim on 18 U.S.C. § 242 (deprivation of rights under color of state law). 18 U.S.C. § 242 is a criminal statute and does not give rise to a private cause of action. See Carpenter v. Ashby, 351 Fed. Appx. 684, 688 (3d Cir. 2009) (affirming dismissal of plaintiff's 18 U.S.C. § 242 claim on the grounds that the statute does not create a civil cause of action). Moreover, "under color of state law" has the same meaning in 18 U.S.C. § 242 as it does in 42 U.S.C. § 1983, Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982), and hence this element is not satisfied for the reasons noted above at 8-9. Because the

---

[5] Plaintiff's Amended Complaint alleges that at one point during the probable cause hearing, the presiding judge allegedly stated that there had been no complaint made at that time. (Am. Compl. ¶ 74.) Under New Jersey law, Plaintiff would not have received a summons to appear before a municipal court judge without a criminal complaint first having been filed. See N.J. Court Rules, R. 3:3-1(b)(1). The Court takes judicial notice of this provision of state law.

Defendants did not act under the color of state law, and 18 U.S.C. § 242 does not provide a private cause of action, Plaintiff's claims under both 42 U.S.C. § 1983 and 18 U.S.C. § 242 should be dismissed.

      C.    <u>Plaintiff's Intentional Tort Claims for Defamation, Intentional Infliction of Emotional Distress, and Abuse of Process are Time-Barred</u>

"Because the purported jurisdiction over the state law claims is based on supplemental jurisdiction, the choice of law rules of the forum state apply." <u>Edison Fund v. Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 232 (S.D.N.Y. 2008) (internal citations omitted). In applying the law of the forum, a court looks to that state's choice-of-law rules and statutes of limitations. <u>See</u> <u>Stuart v. American Cyanamid Co.</u>, 158 F.3d 622, 626 (2d Cir. 1998) (citing <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108-09 (1945)). "Choice of law provisions typically apply to only substantive issues and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right." <u>Portfolio Recovery Assoc., LLC v. King</u>, 14 N.Y.3d 410, 416 (2010). Further, "[s]ince under common-law rules matters of procedure are governed by the law of the forum, it has generally been held that the Statute of Limitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action." <u>Martin v. Julius Dierck Equip. Co.</u>, 43 N.Y.2d 583, 588 (1978). The Court will therefore look to New York's borrowing statute, N.Y. C.P.L.R. § 202, to evaluate the timeliness of Plaintiff's claims. <u>See</u> <u>Morson v. Kreindler & Kreindler, LLP</u>, 2011 U.S. Dist. LEXIS 112310, at *10-11 (E.D.N.Y. Sept. 28, 2011). Pursuant to N.Y. C.P.L.R. § 202, the Court must apply the New York statutes of limitations to this action because it involves an alleged injury to a New York resident that occurred outside the state. <u>See</u>

N.Y. C.P.L.R. § 202 (McKinney 2003); see also Mylon v. Hackensack Univ. Med. Ctr., No. 5:06-CV-268, 2007 U.S. Dist. LEXIS 17495, at *3 (N.D.N.Y Mar. 9, 2007).

In New York, defamation actions are subject to a one year statute of limitations, which accrues on the date of first publication.  See  N.Y. C.P.L.R. §215(3); see also Hoesten v. Best, 821 N.Y.S.2d 40, 54 (1st Dep't 2006).  Plaintiff alleges that Defendants falsely accused her of the criminal offense of coercion to the Korean Broadcasting Network (KBN), which in turn relayed the information to the president of the Korean American Association of Greater New York (KAAGNY), who subsequently fired Plaintiff from her volunteer position.  (Compl. ¶ 110-111.)  Plaintiff does not provide a detailed timeline, but does allege that all of these events occurred on or before May 21, 2009.  (Compl. ¶ 110.)  Plaintiff did not commence this action until March 16, 2011, more than one year after the alleged defamation occurred.  Therefore, Defendants' alleged defamatory acts fall outside the one-year period Plaintiff had to bring suit, and hence her claim for defamation is time-barred.

Section 215 also includes claims for intentional infliction of emotional distress.  See Jemison v. Crichlow, 531 N.Y.S.2d 919, 922 (2d Dep't 1988) (stating that plaintiff's "cause of action for intentional infliction of emotional distress is also governed by a one-year Statute of Limitations and so is time-barred").  The statute of limitations for an  intentional infliction of emotional distress claim begins to run when the injury is suffered.  See Passucci v. Home Depot, Inc., 889 N.Y.S.2d 353, 353 (4th Dep't 2009).  In the present case, the Plaintiff alleges that the Defendants' act of filing a false criminal complaint caused her "great physical harm and mental anguish from [the date of Defendants' false accusations] until now. . . ."  (Am. Compl. ¶ 116.) Because Plaintiff alleges that the injury was initially sustained upon the act of filing the criminal

complaint, which occurred on April 22, 2009, more than one year before she brought this action, her claim for intentional infliction of emotional distress is also time-barred.

Abuse of process claims have also been found to be governed by the one-year statute of limitations set forth in Section 215.  See Bittner v. Cummings, 591 N.Y.S.2d 429, 431 (2d Dep't 1992) ("Abuse of process and malicious prosecution are both intentional torts which are governed by CPLR 215, the one-year Statute of Limitations").  However, unlike malicious prosecution claims, "the accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor."  Cunningham v. State of New York, 53 N.Y.2d 851, 853 (1981); accord Keller v. Butler, 246 N.Y. 249, 255 (1927) ("[T]he initial proceedings need not be terminated to give a cause of action.").  Plaintiff has alleged that Defendants' abuse of process consisted of filing a false criminal complaint and committing perjury, all of which occurred before March 18, 2010, and hence more than one year before the Plaintiff brought this action.  Therefore, Plaintiff's claim for abuse of process is also time-barred.

D.     Plaintiff's Claim Under 20 C.F.R. § 656.12 Should be Dismissed Because it Does not Provide for a Private Cause of Action

Plaintiff also brings a claim under 20 C.F.R. §656.12, which states that "[a]pplications for permanent labor certification and approved labor certifications . . . shall not be offered for sale, barter or purchase by individuals or entities."  20 C.F.R. § 656.12(a).  This regulation "provides an exclusive list of government remedies - denial, revocation, or debarment - and contains no private right of action."  Alvarado v. Universidad Carlos Albizu, No. 10-22072-CIV, 2010 WL 3385345, at *3 (S.D. Fla. August 25, 2010).  Accordingly, the statute does not provide for private causes of action.  See id.

In her opposition to Defendants' motion to dismiss, Plaintiff attempts to amend her Amended Complaint yet again by instead referring to an unidentified Department of Labor regulation.[6] (Pl. Mem. of Law 20.) As Defendants point out, Plaintiff may not amend her Complaint through her opposition to the within motion. See In re Agape Litig., 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and such facts are thus irrelevant for purposes of determining whether [the Plaintiff's] [c]omplaint should be dismissed for failure to state a claim.") (internal quotes and citations omitted); Sanders v. Long Island Newsday, No. CV 09-2393, 2010 WL 3419653, at *9 (E.D.N.Y. May 19, 2010) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Even if Plaintiff were granted permission to amend her Complaint, such amendment would not give way to a private cause of action under 20 C.F.R. §656.12, and hence would be futile. Due to the lack of a right to a private cause of action under 20 C.F.R. §656.12, the Plaintiff's claim should be dismissed.

E.    Plaintiff's Perjury Claim Should be Dismissed Because New York Law Does Not Provide for a Private Cause of Action

Plaintiff also brings a claim against Defendants for perjury. "New York has long declined to recognize a private cause of action 'for perjury or the use of false documents.'" Frierson-Harris v. Hough, No. 05 Civ. 3077, 2006 WL 298658, at *7 (S.D.N.Y. February 7, 2006) (quoting Netchi v. Bernard, 167 N.Y.S.2d 89, 90 (Sup. Ct. 1957)). New Jersey law

_____

[6] Plaintiff has already filed two Amended Complaints since initiating this action, the first on July 27, 2011 and the second on August 1, 2011. Both Amended Complaints were filed after defendants had already moved to dismiss the original Complaint. During a pre-motion conference held before Judge Bianco on August 29, 2011, plaintiff's Amended Complaint dated August 1, 2011 was deemed accepted by the Court and defendants were permitted to make the within motion.

similarly does not provide a private cause of action for perjury. See Oxfurth v. Siemens A.G., 142 F.R.D. 424, 427 (D.N.J. 1991) ("Under New Jersey law, there is no private cause of action for perjury and/or false swearing."); Harmon v. Holmes, 712 F. Supp. 451, 454 (D.N.J. 1989) ("[P]erjury is a criminal offense that does not give rise to a private cause of action."); see also N.J. Stat. § 2C:28-1. Accordingly, Plaintiff's claim for perjury should be dismissed.

F.   Plaintiff's Claim for Unpaid Wages Under the FLSA Should be Dismissed Because Plaintiff is an Exempt Employee as Defined by the FLSA

Plaintiff has not stated a claim for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §200-219. The three-year statute of limitations for recovery of backpay that Plaintiff cites is applicable only to wages entitled under the FLSA, specifically, wages due to an employee under either minimum wage or overtime provisions. See 29 U.S.C. § 206-7. These provisions apply only to non-exempt employees, as categorized by the FLSA. See 29 U.S.C. § 2013. There are several categories of exempt employees, including those that are employed in a bona fide professional capacity. See 29 U.S.C. §213(a)(1). Plaintiff, as an attorney, falls under the "professional capacity" exemption,[7] and is therefore considered an exempt employee under the FLSA. See id. Therefore, the FLSA is not applicable to Plaintiff, and Plaintiff's claim should be dismissed.

G.   Plaintiff's Fraud Claim Should be Dismissed Because it was not Alleged in the Amended Complaint

In her opposition to the motion to dismiss, Plaintiff again attempts to amend her

---

[7] The term "employee employed in a bona fide professional capacity" includes "[a]ny employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof." 29 C.F.R. § 541.304(a)(1).

Amended Complaint, this time to include a claim for fraud, which was not previously alleged. (Def. Mem. of Law 19.)  As noted earlier, Plaintiff may not amend her complaint through opposition to motions.  See  In re Agape Litig., 773 F. Supp. 2d at 316; Sanders, 2010 WL 3419653, at *9.  The appropriate way to plead this claim is to amend the Amended Complaint. Accordingly, this claim should be dismissed.

III.    Plaintiff's Claim for a Declaratory Judgment Granting a U-Visa Pursuant to 28 U.S.C. § 2201 Should be Dismissed

Plaintiff seeks a declaratory judgment granting a U-1 non-immigrant visa.  "The U non-immigrant status . . . is set aside for victims of crimes who have suffered mental or physical abuse as a result and who are willing to assist law enforcement and government officials in the investigation of the criminal activity."  U.S. Citizenship and Immigration Services, http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextc hannel=7913ffa920b82110VgnVCM1000004718190aRCRD&vgnextoid=6d  (last visited Jan. 19, 2012).  The Declaratory Judgment Act limits the ability of courts to grant declaratory relief to "case[s] of actual controversy within its jurisdiction."  28 U.S.C. § 2201.  In Skelly Oil Co.v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950), the Supreme Court described the limits on federal court declaratory jurisdiction: "'[J]urisdiction' means the kinds of issues which give right of entrance to federal courts.  Jurisdiction in this sense was not altered by the Declaratory Judgment Act."  Id.  Plaintiff has failed to state a claim that falls within the federal courts' jurisdiction.

Congress has explicitly vested the power to hear U-1 applications in the United States

Citizenship and Immigration Services ("USCIS"), a branch of the Department of Homeland Security.  See 8 C.F.R. § 214.14(c).  The USCIS has sole jurisdiction over U-1 visa petitions. See 8 C.F.R. § 214.14(c).  The district court may hear claims alleging that an administrative authority has failed to perform a duty owed to a plaintiff.  See 28 U.S.C. § 1361.  However, Plaintiff has set forth no factual allegations that give rise to potential claims of impropriety by the USCIS.

Plaintiff claims that Defendants deceived her into believing that they intended to sponsor her as an employee, and that this alleged deception served as the basis for Plaintiff hiring an immigration attorney and taking the necessary steps to file an I-140 Immigration Petition.[8] (Compl. ¶ 7.)  The USCIS owed no duty to the Plaintiff because she never satisfied  the preconditions needed for citizenship based on a permanent work authorization.  See United States Department of Labor, Permanent Labor Certification, http://www.foreignlaborcert.doleta.gov/perm.cfm (last visited Jan. 4, 2012) (stating that it is the employer who must apply for a  Department of Labor certification and submit an immigration petition predicated on the work certification within 180 days of certification).  Plaintiff never made an I-140 application and the USCIS never rendered a judgment against the Plaintiff.[9]

---

[8]  Plaintiff's ability to file for an I-140 Immigration Petition was dependent on Defendants' receiving a permanent employment certification from the Department of Labor and filing the I-140 Immigration Petition with the USCIS within 180 days of certification. Defendants failure to file the I-140 Immigration Petition within the required time frame rendered the certification void.  Plaintiff now seeks, through declaratory relief, entrance into the United States based on a U-1 visa.

[9]  Even if Plaintiff had satisfied all preconditions and made out an I-140 application that the USCIS denied, the district court would not be the appropriate forum for appealing a USCIS decision.  The Administrative Appeals Office "adjudicates appeals under authority delegated to the USCIS by the Secretary of the Department of Homeland Security."  United States Citizenship

Plaintiff claims that 8 C.F.R. §214.14 grants the court jurisdiction to enter a declaratory judgment; however, Plaintiff's interpretation of the statute is misguided. 8 C.F.R. § 214.14 allows the court to certify that a "petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim." 8 C.F.R. § 214.14(a)(12). This certification merely serves as a prerequisite to an application for a U-1 visa. See 8 C.F.R § 214.14(c) (setting forth the requirements for an application as requiring the certified form while emphasizing the sole jurisdiction of USCIS). A petitioner must utilize the appropriate jurisdictional channels in order to obtain the actual visa. See 8 C.F.R. § 214.14(c) ("USCIS has sole jurisdiction over all petitions for U non-immigrant status."). Discretion as to whether a victim of criminal activity should receive U-1 non-immigrant status remains with the USCIS. See 8 C.F.R. § 214.14(c) ("USCIS has sole jurisdiction over all petitions for U non-immigrant status."). This court is not empowered to grant a visa based on 8 C.F.R. §214.14.

Accordingly, Plaintiff has failed to allege facts upon which a request for declaratory relief may be granted and Defendants' motion to dismiss with respect to this claim should be granted.


IV.    The Remaining State Law Claims

    A.    Plaintiff's Breach of Contract Claim is Sufficiently Pled

        Plaintiff has sufficiently pled a claim for breach of contract. "The elements of a

_____

and Immigration Services,
http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnexto
id=dfe316685e1e6210VgnVCM100000082ca60aRCRD&vgnextchannel=dfe316685e1e6210Vg
nVCM100000082ca60aRCRD (last visited Jan. 19, 2012).

breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach."[10] Kramer v. New York City Bd. of Educ., 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010) (quoting RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC., 156 Fed. Appx. 349, 350-51 (2d Cir. 2005)). Plaintiff has alleged the existence of a contract. (Am. Compl. ¶ 138.) She further has alleged that she performed her portion of the contract by setting up and maintaining the initial South Korea office. (Id.) Finally, she alleges that Defendants failed to pay her the agreed upon ten percent (10%) of the earnings from all cases referred from the latter Korea office. (Id.) Defendants argue that Plaintiff has not shown that any cases referred from the latter Korea office have actually earned money, and is therefore requesting ten percent (10%) of nothing. (Def. Mem. of Law 9.) However, "[a] plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages. It need only plead allegations from which damages attributable to the defendant's malpractice might be reasonably inferred." Rock City Sound, Inc. v Bashian & Farber, LLP, 903 N.Y.S.2d 517, 520 (2d Dep't 2010) (citing cases). Plaintiff has so pled. Because each of the four elements of a breach of contract has been sufficiently pled, Defendants' motion to dismiss with respect to plaintiff's breach of contract claim should be denied.

---

[10] The same elements are required under New Jersey law, and hence there is no potential conflict. "To prevail on its breach of contract claim, defendant must prove the following elements: (1) a valid contract existed between plaintiff and defendant; (2) plaintiff breached the contract; (3) defendant performed its obligations under the contract; and (4) defendant was damaged as a result of the breach." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003).

B.     Plaintiff's Unjust Enrichment Claim is Sufficiently Pled

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."[11] Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000) (internal quotation marks omitted).  In the instant litigation, Plaintiff has alleged that the Defendants have benefitted from the business of the Korea office due to Plaintiff's uncompensated work and that she is due payment for her efforts.  (Am. Compl. ¶138-140.) Plaintiff has therefore sufficiently pled all of the elements for an unjust enrichment claim under New York law.

However, Plaintiff's claim for unjust enrichment will be dismissed if the existence of a contract can be proven.  Unjust enrichment is "precluded by the fact that a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract - i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself - has been violated." Brown v. Brown, 785 N.Y.S.2d 417, 419 (1st Dep't 2004).  Plaintiff alleges a breach of contract.  (Am. Compl. ¶138.)  If a contract is found to exist, Plaintiff will be barred from additionally bringing an unjust enrichment claim.  However, until said finding, Plaintiff may bring a claim for unjust enrichment.  Because all the elements of an unjust enrichment claim have been sufficiently pled, I recommend that Defendants' motion to dismiss with respect to this claim be denied.

---

[11]  Under New Jersey law, "unjust enrichment has two essential elements: (1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." Von Nessi v. XM Satellite Radio Holdings, Inc., No. 07-2820, 2008 U.S. Dist. LEXIS 74345, at *13 (D.N.J. Sept. 26, 2008) (internal quotations and citations omitted).

## C. Plaintiff's Malicious Prosecution Claim is Sufficiently Pled

Plaintiff's malicious prosecution claim is timely.[12] As discussed <u>supra</u>, New York law applies to the statutes of limitations in this action. Under New York law, malicious prosecution claims are subject to a one-year statute of limitations. <u>See</u> N.Y. C.P.L.R. § 215(3). Defendants point to the date the criminal complaint was filed, April 22, 2009, as the date that the statute of limitations on a malicious prosecution claim starts to run. (Def. Mem. of Law 4-5.) However, malicious prosecution claims are timely if brought within one year of the termination of the proceedings. <u>See</u> <u>10 Ellicott Square Court Corp. v. Violet Realty, Inc.</u>, 916 N.Y.S.2d 705, 707 (4th Dep't 2011) ("A cause of action for malicious prosecution is governed by a one-year statute of limitations, which begins to run upon termination of the underlying lawsuit"); <u>Campo v. Wolosin</u>, 622 N.Y.S.2d 291, 292 (2d Dep't 1995) ("A cause of action to recover damages for malicious prosecution accrued when the criminal proceeding terminated favorably to the plaintiff."). In the instant litigation, the criminal charges were dismissed on March 18, 2010, just barely within one year of March 16, 2011, the date the initial Complaint in this actionwas filed. Because the initial Complaint was filed within one year of the termination of the criminal proceedings, the claim for malicious prosecution is timely.

---

[12] Plaintiff's Amended Complaint appears to allege a claim for malicious prosecution under both Section 1983 and New York State law. However, as discussed <u>supra</u>, as private citizens, defendants do not satisfy the color of state law requirement for a Section 1983 action for malicious prosecution. <u>See</u> <u>Middleton v. City of New York</u>, No. 04-CV-1304, 2006 U.S. Dist. LEXIS 44320, at *29 n.9 (E.D.N.Y. June 19, 2006) (dismissing Section 1983 claims for false arrest and malicious prosecution where defendant was a private citizen and therefore, not a state actor). Accordingly, only the state law malicious prosecution claim is adequately pled.

The elements of a malicious prosecution claim are identical in the two jurisdictions.[13]

See Broughton v State of New York, 37 N.Y.2d 451, 457 (1975) (stating that the elements of a malicious prosecution claim are "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice"); Lind v. Schmid, 67 N.J. 255, 262 (1975) ("A malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff."). There is no conflict between New York and New Jersey law with regard to the commencement, malice and probable cause elements.

Plaintiff alleges that there was a false criminal complaint filed by the Defendants for the purposes of preventing Plaintiff from receiving a visa and the amounts owed to her by Defendants in accordance with their agreements. (Compl. ¶ 66.) These allegations properly plead the commencement and malice elements of a malicious prosecution claim.

Probable cause was found in the Plaintiff's criminal action. (Letter of Fort Lee Municipal

---

[13] Under New York's choice of law rules, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved. An actual conflict exists where the applicable law from each jurisdiction provides different substantive rules." Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 232 (S.D.N.Y. 2008) (internal quotations and citations omitted). Here, like in Edison Fund, New York is the forum state and the Court must determine whether there is a conflict between the laws of the jurisdictions involved, namely New York and New Jersey.

Court dated May 11, 2010.)[14]  However, if Plaintiff establishes that the municipal court findings were obtained by fraud, perjury, or other corrupt means, that finding would be overcome.  See Lind, 67 N.J. at 265-266; Paterson v. Newark Police Dep't, No. 04-2332, 2005 U.S. Dist. LEXIS 36284, at *6-7 (D.N.J. Aug. 24, 2005) ("[A] grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, but . . . this prima facie evidence may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means."); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411 (S.D.N.Y. 2002) (Probable cause "can only be overcome by establishing that the indictment itself was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.").  Plaintiff alleges that the deliberate mistranslation of the e-mail by Defendants, and the Defendants' allegedly false testimony at the probable cause hearing were the basis for the finding of probable cause, and therefore, that no probable cause actually existed.  (Compl. ¶ 83-86.)  "[E]vidence of malice - that is, misrepresentation, withholding, or falsification of evidence, fraud, perjury, or other bad-faith conduct - is itself probative of a lack of probable cause."  Peterson v. Bernardi, 719 F. Supp. 2d 419, 428 (D.N.J. 2010).  Plaintiff has sufficiently pled the probable cause element of her malicious prosecution claim.

A conflict of law issue arises on the last element, i.e. whether the proceeding terminated

---

[14]  Plaintiff argues that a letter submitted by Defendants to the undersigned, which included the May 11, 2010 letter from the Fort Lee Municipal Court, was not submitted in accord with filing deadlines and should be ignored by the Court.  (Letter of Jae Soog Lee dated December 28, 2011).  Plaintiff is correct that it was not filed in accord with the deadlines set by the Court.  However, "the Court may take judicial notice of judgments entered in prior proceedings, and dismissal under Rule 12(b)(6) is appropriate if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Joseph v. HDMJ Rest., Inc., 685 F. Supp. 2d 312, 315 (E.D.N.Y. 2009) (quoting Conopco, Inc. v. Roll Intern., 231 F.3d 82, 86 (2d Cir. 2000)).

in favor of the Plaintiff.  Therefore, the Court must utilize a conflict-of-laws analysis.  "Under New York's choice of law, courts ordinarily apply an 'interests' analysis for the purposes of determining which state's law applies in a multi-state tort case."  Tripodi v. Local Union No. 38, Sheet Metal Workers' Int'l Assn, 120 F. Supp. 2d 318, 321 (S.D.N.Y. 2000).  "The paramount interest in cases involving the torts of malicious prosecution and abuse of process is that of the state whose court was allegedly abused.  Therefore, the general rule in such actions is that the governing law is that of the state where the proceeding complained of took place."  Id.  Here, the courts that were allegedly abused are in New Jersey, and accordingly New Jersey law will be applied.

The charge against Plaintiff was dismissed on March 18, 2010.  (Letter of Fort Lee Municipal Court dated May 11, 2010.)  "Although the formal abandonment of proceedings by the prosecutor can constitute favorable termination, this is not always the case."  Lyman v. Long, No. 08-5303, 2011 U.S. Dist. LEXIS 42951, at *28-29 (D.N.J. Apr. 20, 2011).  "The judge must decide, after considering what occurred before the criminal court, whether the nature of such termination was such as to justify the conclusion that it was one favorable to plaintiff."  Williams v. Page, 160 N.J. Super. 354, 362 (App. Div. 1978).  Here, inadequate facts have been presented by either side to indicate the basis for dismissal.  The Court is therefore unable at this point to make any determination as to the important issue of whether the case was terminated in favor of the Plaintiff.  Hence, this issue should be addressed in any summary judgment motion or at trial.  The parties undoubtedly will seek to unseal the record and exchange relevant documents related to the dismissal.  I further note that Plaintiff claims that the termination in her criminal case was one favorable to her.  Plaintiff alleges that "the criminal proceeding was terminated in favor of

Plaintiff when the Prosecutor recommended a dismissal in the interest of justice, and the Court accepted the recommendation and dismissed the charge against Plaintiff." (Compl. ¶ 84.) Neither side has presented any case law addressing an interest of justice dismissal under New Jersey law, and the Court's research has produced no such cases. Accordingly, this claim should survive the motion to dismiss at this stage of the action.[15]

Notwithstanding the foregoing, having found that all of Plaintiff's federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), I recommend that it decline to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). "'Since [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [his state law] claims." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007) (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (alterations in original) (additional citations omitted).

---

[15] Under New York law, "[a] dismissal in the interest of justice is neither an acquittal of the charges nor any determination of the merits . . . Consequently, as a matter of law, it cannot provide the favorable termination required as the basis for a claim of malicious prosecution." Hygh v. Jacobs, 961 F.2d 359, 368 (2d Cir.1992) (citations and internal quotation marks omitted).

Accordingly, I recommend that the state law claims be dismissed without prejudice.

## RECOMMENDATION

For the foregoing reasons, I recommend that Defendants' motion to dismiss be granted and that Plaintiff's Amended Complaint be dismissed in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
      February 2, 2012

/s/ E. Thomas Boyle_____
E. THOMAS BOYLE
United States Magistrate Judge